JUSTICE RICE
concurring in part and dissenting in part.
*281 ¶48 I dissent from the Court’s answer to question two.
¶49 As a matter of public policy, subrogation by an insurer of payments made to the insured pursuant to a medical payment policy violates the basic tenets of insurance coverage. The insured is forced to return the benefits for which he has paid, reimbursing the insurer, who thus avoids the risk of loss which it was paid to assume, while nonetheless keeping the premiums it has received. Premiums are no doubt premised upon the anticipated orchestration of this scheme, and pursuit of the wrongdoer by the insurer is encouraged. However, recognizing the effect of subrogation on the insurance consumer, this Court held that medical payment subrogation clauses are violative of public policy in Allstate Insurance v. Reitler.
¶50 Reitler was reaffirmed in Youngblood v. American States, even in the face of the insurer’s assertion that subrogation was authorized under § 33-23-203, MCA. Although subrogation was authorized by statute in other insurance contexts, the Court noted that it was not referenced in § 33-23-203, MCA, and refused to read the right of subrogation into the statute.
¶51 The Legislature responded to Youngblood by enacting Chapter 263, Laws of Montana (1997), entitled “An Act Establishing Subrogation Rights in Motor Vehicle Liability Policies; and Amending Section 33-23-203.” This section was thus amended to read as follows:
(2) A motor vehicle liability policy may also provide for other reasonable limitations, exclusions, reductions of coverage, or subrogation clauses that are designed to prevent duplicate payments for the same element of loss under the motor vehicle liability policy or under another casualty policy that provides coverage for an injury that necessitates damages or benefit payments. [Emphasis added.]
¶52 The Legislature thus revised the public policy declared by this Court in Reitler and validated “reasonable” subrogation clauses which are designed to prevent duplicate payments for the same element of loss. However oxymoronic the term “reasonable subrogation” may appear in light of the above-noted effects of subrogation on the insurance consumer, it is clear that motor vehicle policies may now properly include such clauses.
¶53 Pursuant to the terms of the policy at issue here, Hartford paid certain medical costs incurred by Swansons. When Constitution then made payment to Swansons for the same medical costs, Hartford sought to subrogate against Constitution’s payment. Because Constitution’s payment was a “duplicate payment for the same element of loss,” Hartford’s attempt, pursuant to its policy, to subrogate against Constitution’s medical expense payment was *282 permissible under the 1997 amendment to § 33-23-203, MCA. As the Court acknowledges in ¶ 22, the legislation specifically authorizes subrogation in this circumstance.
¶54 However, the Court responds to the legislation by holding that a duplicate payment for medical expenses is not really a duplicate payment until the insured has recovered all other damages related to the accident. The Court reasons in ¶ 22 that because the Legislature did not address the made whole doctrine within the amendment, it intended the doctrine to remain intact, and, consequently, the doctrine forestalls subrogation until the insured has fully recovered all elements of loss. While the Court’s reluctance to yield our antisubrogation policy to legislative enactment is understandable, it erroneously applies the made whole doctrine to avoid doing so.
¶55 Our cases establish that the doctrine is premised upon the principle that the insurer has received a premium to take the risk that the insured will be damaged, and that the insured must be made whole before the insurer can exercise its subrogation interest:
[W]e adopt the view that when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney’s fees, before the insurer can assert its right of legal subrogation against the insured or the tort-feasor.
Skauge, 172 Mont. at 528, 565 P.2d at 632 (emphasis added).
[T]he important aspect of the [Skauge] case is the adoption of the equitable principle that an insured must be totally reimbursed for all losses as well as the costs involved in recovering those losses. The insured has paid premiums to be insured.
DeTienne, 266 Mont. at 191, 879 P.2d at 708-09 (emphasis added).
[I]t is equitable that the loss be born by the insurer which had been paid an insurance premium for the assumption of its liability. ... The key aspect is that the insurer has been paid for the assumption of the liability for the claim, and that where the claimant has not been made whole, equity concludes that it is the insurer which should stand the loss, rather than the claimant.
Zacher v. American Insurance Co. (1990), 243 Mont. 226, 230-31, 794 P.2d 335, 338 (emphasis added). These cases clearly demonstrate that the made whole doctrine is completely premised upon the principle that the insurer has assumed the risk for the insured’s loss. The doctrine cannot possibly be applied to risks that the insurer has not been paid to assume.
¶56 According to the submitted facts, the premiums paid by Swansons purchased coverage from Hartford for medical expenses, lost wages and rehabilitation expenses. Therefore, Hartford did not assume the *283 risk that Swansons would be fully compensated for other damages they may suffer from the accident-it assumed the risk only for those damages for which coverage was provided under the policy. Swansons have pursued recovery of losses not covered by the Hartford policy. By applying the made whole doctrine to Hartford’s subrogation interest, the Court is holding Hartford hostage to Swansons’ recovery of damages that are beyond the risk that Hartford was paid to assume. This violates the fundamental premise upon which the made whole doctrine is founded.
¶57 Swansons paid a premium for the medical benefits that were provided under the Hartford policy. Thus, under the made whole doctrine, they Eire entitled to be made whole prior to Hartford’s subrogation of those payments. Proper application of the doctrine here requires Swansons to be reimbursed by Hartford for their attorney fees and costs associated with their recovery of medical damages from Constitution, so that Hartford bears the burden of the costs of recovery of those damages. However, the doctrine does not require that Swansons recover losses not insured by Hartford’s policy before Hartford is entitled to subrogate for the particular losses it was paid to assume.
¶58 The Court sees inconsistency between this dissent and our decision in McMillan. It states that McMillan was awarded damages in excess of those the State Fund had a contractual duty to assume, and that our application of the made whole doctrine there did not distinguish between the amounts awarded for losses covered by the State Fund Eind those not covered by the Fund. The Court is correct in stating that we made no such distinction in McMillan; it was not at issue there. In McMillan, we addressed the State Fund’s request to be released from contractual obligations it had been paid to assume. Here, Hartford does not seek to be released from its obligations. Rather, Hartford has completely fulfilled its contractual obligation and undertaken all of the risks it was paid to assume. Further, an entirely different statute governs here.
¶59 In McMillan, the State Fund petitioned, pursuant to the subrogation provisions of § 39-71-414, MCA (1985), of the Workers’ Compensation Act, to terminate its continuing contractual obligation to pay workers’ compensation payments, arguing that it could subrogate its obligation against McMillan’s partial third party recovery. This Court correctly determined that the subrogation statute at issue did not relieve the Fund of its contractual obligation to pay benefits until such time as McMillan had been made whole for his injuries. Our holding was premised on State Fund’s assumption of the risk that it would have to fulfill the entirety of its contractual *284 obligation: “the insurer has been paid for the assumption of the liability for the claim.” McMillan, ¶16. Thus, McMillan addressed the obligation of an insurer for risks it had assumed. Here, the Court is improperly applying the doctrine to risks the insurer did not assume.
¶60 The made whole doctrine provides that when a claimant’s third party recovery is less than the losses sustained by the claimant, and for which the insurer has paid the claimant, then the insurer must bear the deficit:
[T]he basic conclusion is that when the amount recovered by a claimant is less than the claimant’s total loss, with a result that either the claimant or the insurer must to some extent go unpaid, then it is equitable that the loss be born [sic] by the insurer which had been paid an insurance premium for the assumption of its liability.
McMillan, ¶ 9, quoting Zacher v. American Ins. Co., supra. A proper understanding of the doctrine illustrates that it equitably distributes unrecovered loss in the contractual relationship between insurer and insured. It is premised upon the insurer’s assumption of a risk for which it has been paid a premium, and thus places any deficit in the recovery of those losses on the insurer. Thus, as stated in McMillan, it is the insurer which “must to some extent go unpaid,” and must bear the claimant’s cost of recovery.
¶61 However, the Court here applies the doctrine to damages unrelated to the insurer’s acceptance of premium and the accompanying risk. Application of the doctrine in such manner divorces it from the principles upon which this Court founded it in Skauge, and applied it in all subsequent cases. The Court now uses the doctrine as an untethered bludgeon to prevent the recovery to which the insurer is statutorily entitled.
¶62 To the extent that I would require a Colorado insurance policy to conform to Montana public policy, I concur with the Court’s answer to question three.